**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VÍCTOR J. FLUXA, MARISOL P. FLUXA, in their individual capacities and as co-administrators of their conjugal partnership, Plaintiffs,<br><br>v.<br><br>BANCRÉDITO INTERNATIONAL BANK CORPORATION, INSURANCE AGENCY ABC, INC., Defendants. | Case No.<br><br>Re: Wrongful Termination, Request for Payment of Severance Pay, Wages and Benefits; Law 80, March 8, 1976, as amended, 29 LPRA §§185, et seq. Age Discrimination under Law 100, 30 June, 1959, as amended, 29 LPRA §§146-151; Retaliation under Law 115 of 20 December, 1991, as amended; 29 LPRA §§ 194, et seq.; Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 LPRA §§5141-5142.<br><br>Trial by Jury is Requested |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW the plaintiffs, Víctor J. Fluxa and Marisol P. Fluxa, in their individual capacities and as co-administrators of their conjugal partnership, through the undersigned counsel, and hereby STATE and PRAY:

## JURISDICTION

1. This Court has original jurisdiction to entertain this action under 28 USC §1332. There is diversity of citizenship between the parties and this is an action amounting over seventy five ($75,000.00) thousand dollars.
2. Both plaintiffs, Victor J. and Marisol P. Fluxa, are residents of the State of Florida. The defendant, Bancrédito International Bank Corporation is a bank, or in the alternative, a financial, incorporated and with main offices in San Juan Puerto Rico

and duly authorized to do business as such by the Commissioner of Financial Institutions of Puerto Rico. Insurance Agency ABC, Inc., is an insurance company with main offices and duly authorized to do business in Puerto Rico by the Insurance Commissioner of Puerto Rico. Therefore, this Court also has original jurisdiction under 28 USC §1441.

3. This Court has supplementary jurisdiction under 28 USC §1367 since there are claims under Puerto Rico law under the same nucleus of facts in the above captioned civil action of which this District Court of Puerto Rico has original jurisdiction as well.

**THE PARTIES**

4. The plaintiffs, Víctor J. Fluxa (hereinafter "Fluxa") and Marisol P. Fluxa (hereinafter "Mrs. Fluxa") are married, of legal age, and residents of Kendall, Florida. They appear on this Complaint in their individual capacities and as co-administrators of their conjugal partnership.

1. Codefendant, Bancrédito International Bank Corporation (hereinafter "Bancrédito" or "the Bank"), is a duly authorized bank to do business by the Financial Institutions Commissioner of Puerto Rico with main offices in San Juan, Puerto Rico.

2. In the alternative, codefendant, Bankcrédito International Bank Corporation (hereinafter "Bancrédito" or "the Bank"), is a duly authorized financial institution to do business by the Financial Institutions Commissioner of Puerto Rico with main offices in San Juan, Puerto Rico.

3. Insurance Company ABC, Inc., is a fictitious name, at these stage in proceedings, to the insurance company retained or which held and insurance policy to cover any

liabilities, either due to errors and omissions or to the actions thereof of any of Bancrédito's management, executives, board of director members, agents, and/or employees. Upon information and belief, said Insurance Company ABC is duly authorized to do business as an insurance company by the Puerto Rico Insurance Commissioner Office. The exact name will be substituted as soon as it is known.

**FACTS**

4. Plaintiff Víctor J. Fluxa is a man who was born in 1972. He is presently forty two (42) years old.
5. Fluxa holds over twenty (20) years of professional experience.
6. Fluxa began his employment as Vice President of Technology with Bancrédito on January 28, 2013, until he was terminated on July 3, 2014.
7. During that time, Fluxa, being always qualified, he performed all duties in a diligent, proper, and satisfactory manner as these were either assigned or expected to be performed by him.
8. His highest salary was ONE HUNDRED AND FORTY ($140,000.00) DOLLARS per year, which is averaged to eleven thousand six hundred and sixty six ($11,666.67) dollars with 67/100 per month, plus other benefits.
9. At all times, Fluxa was the highest ranking individual within Bancrédito to have access to Bancrédito's information and financial systems.
10. On or about the first week of June 2014, during a senior staff meeting, Bancrédito president .Julio Herrera Velutini (hereinafter "Herrera Velutini") informed that Bancrédito Miami offices was going to shut down on July 1, 2014 for which the Miami operation was to transfer to Puerto Rico.

11. The following upper management were present during said early June meeting: Sofía Saracho (vice president of strategy and sales), Frances Díaz, Esq. (vice president of operations), Thais López (board secretary), and Herrera Velutini (chief executive officer.) Juan Carlos Eyherabide, who, upon information and believe was bank consultant, was present as well.

12. Bancrédito's president Herrera Velutini was thrilled to share that business was growing for the Bank and that Puerto Rico was more convenient, including for him, as there were many daily flights to Miami, Continental United States, Mexico, and South America, including Venezuela.

13. Herrera Velutini said the Miami employees, which included Fluxa, had to relocate to the Puerto Rico Office if they wanted to continue working for Bancrédito. All of this was unexpected for Fluxa as this was the first time he heard the news. Fluxa is married, is a resident of Florida, has two (2) daughters in elementary school, and his spontaneous reaction was to say that he could remain performing duties by remote since he was in information technology.

14. In fact, Fluxa's duties and functions during his employment were and could be performed remotely and physical presence was not completely required during his employment time with the Bank.

15. Fluxa was never advised this was a condition for employment.

16. In fact, during said meeting, Herrera Velutini implied that Miami employees would have to pay relocation to Puerto Rico from their own pocket or else they would go goodbye, meaning that they could leave and everything was fine with him.

17. On said meeting, Bancrédito's president told Fluxa they were to engage in further conversationsh on te matter and explore alternatives in order for him to continue exercising his work duties as part of his employment.

18. By the end of the meeting, Fluxa was not concerned at that moment since the conversation was amicable and even felt said meeting concluded in an amicable fashion.

19. Although Fluxa inquired on the Miami location issue during the month of June 2014, no further conversations were taken on the matter for which Fluxa continued to render his everyday duties as expected and requested.

20. On or around June 30, 2014, Fluxa's access to Bancrédito's systems were cancelled with no prior notice.

21. Fluxa sent several emails to Bancrédito's peer management inquiring on the matter, with no response.

22. Fluxa sent emails to Bancrédito's upper management, his peers, between July 1, 2014 and July 2, 2014 to: Sofía Saracho, sales vice president; Herrera Velutini; chairman;, and Frances Díaz, attorney at law, vice president of operations, inquiring about his access to the Bank information and financial systems as these were revoked with no response.

23. Late July 2, 2014, Fluxa received a response to report to Bancrédito's facilities the next day. His access were still revoked by then.

24. On July 3, 2014, Fluxa was notified that he was terminated from his position and was sent employment release forms. That's when the Bank informed he was terminated.

25. As of today, Bancrédito International Bank office in Miami remains in full operation. Therefore, all depictions on closing the Miami location were a pretext just to terminate Fluxa.

26. Fluxa's termination was unjustified and unexcusable under the law.

27. Upon his termination, and as of today, a younger person, between his late twenties and very early thirties, was retained and/or hired to perform Fluxa's duties.

28. In the alternative, upon Fluxa's termination, the Bank hired several younger employees between twenty (20) and early thirty (30) years old to perform his duties which might have done this as a transition.

29. Upon information and belief, additional employees have been hired for the Puerto Rico and Miami locations.

30. Both Puerto Rico and Miami locations belong to Bancrédito which is the same employer.

31. Upon information and belief, the Bank had less than fifteen (15) employees by the time Fluxa was terminated.

**Exhaustion of Administrative Remedies**

32. In order to exhaust administrative remedies, as a requirement under federal labor law, on September 24, 2014, Fluxa filed a charge of discrimination before the Equal Employment Opportunity Commission (hereinafter "EEOC"), San Juan Office, charge number 515-2014-00539 on retaliation and age discrimination grounds.

33. On that same date, the EEOC declined to assert jurisdiction on his federal labor law claims law since the Bank, upon Fluxa's information and belief and information he

provided, upon his best knowledge, had less than fifteen (15) employees. To that effect, the EEOC will be sending a Notice of Right to Sue letter.

34. The instant Complaint if brought under Puerto Rico labor law for which administrative remedies do not need to be exhausted. Fluxa reserves the right to amend his Complaint should there be, upon discovery proceedings, the required number of employees to assert jurisdiction under federal law and request remedies accordingly.

**Count I-Law 80 and Request for Payment of Wages and Benefits**

35. Paragraphs 1 to 34 are incorporated.

36. Fluxa's termination was unjustified under the law.

37. Upon termination, Fluxa was not paid severance pay as he is entitled to pursuant to Puerto Rico Law 80, which amounts, at the least, to twenty seven thousand three hundred and seventy one ($27,371.80) dollars with 80/100.

38. Upon termination, Fluxa was not paid fourteen ($14,000) thousand dollars a yearly Bonus (due on January 2014), which is ten (10%) percent of his base salary. He was not paid for half of the salaries earned during 2014 for which his yearly bonus amounts to seven ($7,000.00) thousand dollars prorated.

39. Upon termination, Fluxa was not paid the amount of One thousand six hundred and fifteen ($1,615.38) dollars with 38/100 cents, which amount to three (3) working days.

40. Upon termination, Fluxa was not paid the amount of five thousand three hundred and eighty four ($5,384.62) dollars with 62/100 cents which amount to two (2) weeks unpaid vacation pursuant to his employment agreement.

41. In addition, Fluxa was not paid for his monthly medical insurance allowance, which amounts, approximately to one thousand five hundred ($1,500.00) dollars. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

42. For the facts herein described on Count I, Fluxa requests to be paid all the wages and severance pay he is entitled to under the law which amounts, in total, for Count I, to fifty five three hundred and seventy one ($55,371.80) dollars and 80/100, plus the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month. He reserves the right to correct figures and modify requests for remedies pursuant to his employment agreement and the applicable laws and regulations.

Count **II-Age Discrimination**

43. Paragraphs 1-42 are incorporated.

44. At all times, Fluxa has been and still is duly qualified to render his functions and duties as information technology vice president.

45. Fluxa is a male, currently forty two (42) years old, he is in a protected category under employment law.

46. Fluxa is a male with over twenty (20) years of experience in management and information technology.

47. Fluxa was replaced by a younger individual, who is around 30 years old.

48. In the alternative, Fluxa was replaced by more than one individual who are in their twenties and/or early thirties.

49. Said actions are discriminatory under Puerto Rico Law 100, damages which amounts, at the least to one hundred and fifty thousand ($150,000.00) dollars, plus a double penalty of one hundred and fifty thousand ($150,000.00) dollars, entitling him, at the least, to a total of THREE HUNDRED THOUSAND ($300,000.00) dollars.

50. Due to Bancrédito's discriminatory practices, Fluxa requests employment reinstallation, back pay, along with all employment benefits he is entitled to under his employment agreement, which amounts, at the least, to eleven thousand six hundred and sixty six ($11,666.67) dollars with 67/100 per month, at the present time SEVENTY THOUSAND ($70,000.02) DOLLARS WITH 02/100 until December 2014, amount which increases, at the least, by eleven thousand six hundred and sixty six ($11,666.67) monthly. Among these benefits, but not limited to, plaintiff requests the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

51. In the alternative, due to Bancrédito's discriminatory practices, front pay is requested for a period of two (2) years, the amount of TWO HUNDRED AND EIGHTY ($280,000.00) THOUSAND DOLLARS, plus all benefits Fluxa is entitled to as per his employment contract and remedies under the law, including, but not limited to

fourteen ($14,000) thousand dollars a yearly Bonus (due on January 2014), which is ten (10%) percent of his base salary, twenty eight ($28,000.00) thousand dollars, and the amount of five thousand three hundred and eighty four ($5,384.62) dollars with 62/100 cents which amount to two (2) weeks unpaid vacation, for two (2) years, the amount of ten thousand seven hundred and sixty nine ($10,729.24) dollars with 24/100 which amounts, at the least to three hundred and eighteen thousand seven hundred and twenty nine ($318,729.00) dollars. Among said employment benefits, but not limited to those he is entitled to, Fluxa requests the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

52. Fluxa requests to be paid the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS. Said figure does not include any benefits he is entitled to under his employment agreement, such as, but no limited to the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

53. For the reasons set forth in Count II, plaintiff Fluxa requests to be paid the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand

($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other employment benefit he is entitled to under his employment agreement.

54. Plaintiff reserves the right to correct figures, modify and clarify his request for relief pursuant to his employment agreement and the remedies allowed under the law.

**Count III-Retaliation**

55. Paragraphs 1-54 are incorporated.

56. On or around the middle of December 2013, Fluxa was requested to modify within bank system, the terms of certificate of deposit for an overseas client who requested withdrawal of monies prior to maturity date. Bankcrédito did not have the cash for payment available to do so by that time.

57. Fluxa notified the Bank this was against the law and banking regulations and that he, as an information technology systems expert and Bancrédito upper management, would be civil and criminally liable before regulatory bodies and that he would have to report such actions to government authorities and assist in case of an investigation**.** For said and other reasons, Fluxa refused to modify Bancrédito system. This is a protected activity under the law.

58. Fluxa was the only person who could perform said actions and at the end, due to the pressure and harassment upon him, the system was finally modified.

59. Plaintiff was terminated in retaliation for refusing to modify Bancrédito's network.

60. Said actions are not only discriminatory and retaliatory as he engaged in a protected activity under Puerto Rico Law 115, damages which amounts, at the least to one

hundred and fifty thousand ($150,000.00) dollars, plus a double penalty of one hundred and fifty thousand ($150,000.00) dollars, for which he is entitled, a the least, to a total of THREE HUNDRED THOUSAND ($300,000.00) dollars.

61. Due to Bancrédito's retaliatory actions, Fluxa requests employment reinstallation, back pay, along with payment of all the benefits he is entitled to under his employment agreement, which amounts, at the least, to eleven thousand six hundred and sixty six ($11,666.67) dollars with 67/100 per month, at the present time SEVENTY THOUSAND ($70,000.02) DOLLARS WITH 02/100 until December 2014, amount which increases, at the least, by eleven thousand six hundred and sixty six ($11,666.67) monthly.

62. Said figure does not include any benefits he is entitled to under his employment agreement, such as, but no limited to the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

63. In the alternative, due to Bancrédito's retaliatory actions thereof, front pay is requested for a period of two (2) years, the amount of TWO HUNDRED AND EIGHTY ($280,000.00) THOUSAND DOLLARS, plus all benefits Fluxa is entitled to as per his employment contract and remedies under the law, including, but not limited to fourteen ($14,000) thousand dollars a yearly Bonus (due on January 2014), which is ten (10%) percent of his base salary, twenty eight ($28,000.00) thousand dollars, and the amount of five thousand three hundred and eighty four

($5,384.62) dollars with 62/100 cents which amount to two (2) weeks unpaid vacation, for two (2) years, the amount of ten thousand seven hundred and sixty nine ($10, 729.24) dollars with 24/100 which amounts, a the least to THREE HUNDRED AND EIGHTEEN THOUSAND DOLLARS FOUR HUNDRED AND SEVENTY NINE ($318,729.24) DOLLARS WITH 24/100.

64. Said figure does not include any and all benefits he is entitled to under his employment agreement, such as, but no limited to the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month. Fluxa requests payment of medical insurance benefits for two (2) years which amounts, approximately to thirty six thousand ($36,000.00) dollars, at the least.

65. For the reasons set forth in Count III, plaintiff Fluxa requests the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand ($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other benefit he is entitled to.

66. Plaintiff reserves the right to correct figures, modify and clarify his request for relief pursuant to his employment agreement and the remedies allowed under the law.

[SPACE LEFT BLANK INTENTIONALLY]

**COUNT IV-ARTICLE 1802 AND 1803 CLAIMS**

67. Paragraphs 1 to 66 are incorporated.

68. Fluxa is distressed and frustrated as it has been difficult to find a similar job position, with benefits and wages up to his professional level and experience. He feels he is passed by in his job hunting as younger employees in his field in information technology get hired and is often perceived as been overqualified by prospective employers.

69. Mrs. Fluxa has been emotionally distressed and upset due to Fluxa, her husband termination. For said reasons, she has been stressed out, gets angry, and feels anxious when she sees her husband frustration in not been able to provide for his family and when they share, as a loving couple, Fluxa's frustration in not been able to find a similar job position with benefits and wages up to his professional level.

70. Ms. Fluxa is upset as she is aware that her husband feels he being is passed by in his job hunting as younger employees in his field in information technology get hired and is often perceived as been overqualified by prospective employers. She has to support her husband, yet, at the same time brings her down.

71. Ms. Fluxa is emotionally distressed as she's currently the only source of income in the household, for which she is working longer hours and holds the pressure of supporting her home financially.

72. Prior to Mr. Fluxa's reckless and willful termination by Bancrédito, Ms. Fluxa had the option of being a stay at home mother. She is a woman with strong traditional family values. Things are not the same for her now, she feels guilty as she cannot perform her motherly duties with her two (2) daughters who are in elementary school as she

did before. Her daughters need her and constantly ask her why she is not at home when they come back from school. The home environment is not the same anymore.

73. Ms. Fluxa requests to be paid a compensation for emotional distress, at the least, of NINETY ($90,000.00) THOUSAND DOLLARS, as of today.

74. Due to their actions and/or omissions and the facts set forth, Bancrédito and Insurance Agency ABC, either through its agents, employees, management, and/or contractors are liable to the plaintiffs.

75. Trial by Jury is Requested.

76. Both Mr. and Mrs. Fluxa reserve the right to amend this Complaint, should there be required number of employees to assert jurisdiction under federal law to request any applicable remedies accordingly.

77. The plaintiffs also reserve the right to amend this Complaint, revise and or correct figures and/or should there be any other reason under the law.

**PRAYER FOR RELIEF**

78. At all times, Bancrédito and Insurance Company ABC, Inc., are liable to the plaintiffs for the grounds and facts set forth in this Complaint.

79. Plaintiffs Víctor J. Fluxa and Marisol P. Fluxa, in their individual capacities and as coadministrators of their conyugal partnership, request this Honorable Grant this Complaint along with the following remedies:

    a. **For Count I, Law 80, severance pay, payment of wages and benefits,** Fluxa requests to be paid by the defendants all the wages, and severance pay he is entitled to under the law and his employment agreement which

amounts, at the least, for Count I, to fifty five three hundred and seventy one ($55,371.80) dollars and 80/100, plus the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which increases, at the least, by one thousand five hundred ($1,500.00) every month.

b. **For Count II, Age Discrimination,** plaintiff Fluxa requests to be paid by the defendants the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand ($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other employment benefit he is entitled to under the law and/or his employment agreement.

c. **For Count III, Retailiation,** plaintiff Fluxa requests to be paid by the defendants the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand ($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other benefit he is entitled to under the law and/or his employment agreement.

d. **For Count IV-Articles 1802 and 1803-**Ms. Fluxa requests to be paid by the defendants a compensation for emotional distress, at the least, of NINETY ($90,000.00) THOUSAND DOLLARS, as of today.

e. Plaintiffs requests costs and attorney fees for twenty five (25%) percent, pursuant to Puerto Rico labor and the corresponding amount on torts claims for thirty three (33%) percent.

f. Plaintiff requests trial by jury.

g. Plaintiffs requests to GRANT any other remedy deemed applicable under the law and equitable principles.

**WHEREFORE,** plaintiffs Víctor J. Fluxa and Marisol P. Fluxa, in their individual capacities and as co-administrators of their conjugal partnership, request this Honorable Grant this Complaint along with the following remedies to be paid by the co-defendants, Bancrédito International Bank Corporation and Insurance Agency ABC:

a. **For Count I, Law 80, Severance pay, Payment of Wages, and Benefits:** Plaintiff Víctor Fluxa requests to be paid by the defendants all the wages, and severance pay he is entitled to under the law and his employment agreement which amounts, at the least, for Count I, to fifty five three hundred and seventy one ($55,371.80) dollars and 80/100, plus the corresponding amounts for his medical insurance benefits, approximately one thousand five hundred ($1,500.00) monthly. As of December 31, 2014, Bancrédito owes the amount of nine thousand ($9,000.00) dollars on medical insurance benefits, amount which

increases, at the least, by one thousand five hundred ($1,500.00) every month.

b. **For Count II, Age Discrimination:** Plaintiff Víctor Fluxa requests to be paid by the defendants the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand ($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other employment benefit he is entitled to under the law and/or his employment agreement.

c. **For Count III, Retailiation:** Plaintiff Fluxa requests to be paid by the defendants the amount of SIX HUNDRED AND EIGHTY EIGHT SEVEN HUNDRED AND SEVENTY NINE THOUSAND ($688,729.02) WITH 02/100 DOLLARS, plus thirty six thousand ($36,000.00) dollars for medical insurance, to a total of SEVEN HUNDRED AND TWENTY FOUR THOUSAND SEVEN HUNDRED AND TWENY NINE ($724,729.02) DOLLARS, at the least, and not including any other benefit he is entitled to under the law and/or his employment agreement.

d. **For Count IV-Articles 1802 and 1803-**Plaintiff Marisol Fluxa requests to be paid by the defendants a compensation for emotional distress, at the least, of NINETY ($90,000.00) THOUSAND DOLLARS, as of today.

e. Plaintiffs requests costs and attorney fees for twenty five (25%) percent, pursuant to Puerto Rico labor and the corresponding amount on torts claims for thirty three (33%) percent.

f. Plaintiff requests trial by jury.

g. Plaintiffs request the Court to GRANT any other remedy deemed proper and applicable under the law.

RESPECTFULLY SUBMITTED.

In Caguas, Puerto Rico, on January 1, 2015.

**LAW OFFICES OF EVELYN AIMÉE DE JESÚS**
PO Box 88
Caguas, P.R. 00726-0088
Telephone (787) 593-3055
email evelynaimee@me.com
email evelynaimee@gmail.com

s/ **EVELYN AIMÉE DE JESÚS**
USDC PR 218401